# In the United States Court of Federal Claims

No. 15-582C & No. 16-1300C
**CONSOLIDATED**
(Filed: July 18, 2017)

| | |
|---|---|
| INTERIMAGE, INC., ) | Motion for Summary Judgment; |
|  ) | RCFC 56; Limitation of Cost; |
| Plaintiff, ) | FAR § 52.232-20; Limitation of |
|  ) | Funds; FAR § 52.232-22; Limitation |
| v. ) | of Liability - Incremental Funding; |
|  ) | NAVSUP 5252.232-9400; |
| THE UNITED STATES, ) | Incorporation of Limitation of Funds |
|  ) | into Delivery Orders |
| Defendant. ) | |
|  ) | |

*Jerry Stouck*, Washington, DC, for plaintiff.  *Ryan Bradel*, Washington, DC, of counsel.

*Sheryl L. Floyd*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Kenneth M. Dintzer*, Deputy Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General.

**OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**FIRESTONE**, *Senior Judge*

Pending before the court in these consolidated contract cases is plaintiff

InterImage, Inc.'s ("InterImage") motion for summary judgment.  InterImage claims that

it is entitled to a final closeout contract payment of approximately $700,000 based on a

certified claim filed in August 2015.  The dispute arises in connection with a cost-plus-

fixed-fee contract (Contract No. N00140-05-D-0058) "to provide full life cycle software

development services . . . for a new Criminal Incident and Case Management System"

which was awarded by the Naval Criminal Investigative Service ("the Navy") to

InterImage in 2005.  The contract included eleven delivery orders.  In January 2013,

InterImage submitted a final invoice for approximately $990,000 and related close-out

documents.  Pl.'s Mot. for Summ. J. 3, Ex. 3 ("Pl.'s MSJ") (ECF No. 45); Def.'s Resp. to

Pl.'s Mot. for Summ. J. 4 ("Def.'s Resp.") (ECF No. 51).[1]  In its final invoice, InterImage

stated that the "funded" total for the contract was $23,155,514.01, including

$21,655,876.37 for costs and $1,499,637.64 for its fee, and that after the audit performed

by the Defense Contract Audit Agency ("DCAA") to set indirect rates, the "settled" total

was $21,555,051.64, including $20,055,414.00 for total costs and $1,499,637.64 for total

fee.  Pl.'s MSJ Ex. 3.  InterImage represented in its final invoice that it had been paid

$20,564,478.32, including $19,304,651.49 for costs and $1,259,826.83 for the fixed fee.

Pl.'s MSJ Ex. 3; Pl.'s Reply 8-9.  The $990,000 represented the difference between the

amount paid and the amount InterImage claimed it was owed for both costs and fee.

Over the course of the next year, the government paid InterImage approximately

$295,000 of the $990,000 claimed in its final invoice.  However, when the government

ran out of funding it stopped paying InterImage.  Thereafter, on August 18, 2015

InterImage submitted a certified claim to the contracting officer for $695,684.48, the

amount it claims is remaining to be paid on the final invoice.  Def.'s Resp. App. A130

("Def.'s App.") (ECF No. 53).  On February 3, 2016, the contracting officer issued a final

---

[1] All filings are in Case No. 15-582C unless otherwise stated.

decision ("COFD") finding that InterImage was due $660,023.72 plus $40,123.89 in interest for a total of $700,147.61.  Pl.'s MSJ Ex. 1; Def.'s App. A139.

Relying on the COFD, InterImage attempted to secure payment, but was told that funding would need to come from other appropriations because the funds to pay InterImage had been de-obligated.  *See* Joint Prelim. Status Report (ECF No. 31, filed Apr. 25, 2016) (representing with regard to the approximately $700,000 in dispute, that "the funding assigned to InterImage's task orders expired and was de-obligated.  In order for InterImage to be paid under the . . . COFD, the Navy must identify additional sources of funding, and such funding must be obligated").  Thereafter, the Navy conducted a new review of InterImage's claim and in a series of e-mails InterImage learned that upon review the Navy had determined that InterImage was seeking payment for both costs and fee above various delivery order ceiling limitations and that the government now believed that it did not owe InterImage any additional money.  Pl.'s MSJ Ex. 14.

InterImage filed the pending action on October 7, 2016.  ECF No. 1 in Case No. 16-1300C.  InterImage has set forth four Counts in its complaint seeking payment of $695,684.48 and attorney's fees.  Count I is for breach of contract based on the government's failure to pay InterImage the amount of $695,684.48 for the work it performed and invoiced but is still due and owing under the contract.  Count II is for quantum meruit based on the same facts as alleged in Count I.  Count III is a claim to enforce the contracting officer's February 3, 2016 decision.  Count IV is a claim for attorney's fees.

InterImage filed the pending motion for summary judgment (ECF No. 45) on Count I of its complaint on November 4, 2016 arguing that as a matter of law InterImage is entitled to payment for amounts claimed but not paid.  InterImage argues that it is undisputed that the amounts claimed for costs are within the base contract ceiling, as amended, and that the contract, and not the individual delivery orders, is controlling with regard to the contract ceiling limitation.  InterImage also argues that the government's objections to InterImage's claim for its fee must be rejected on the ground that the government can only change the fixed fee through an equitable adjustment, which was not done.  InterImage further argues that the amount InterImage has claimed for the fixed fee is justified based on the total hours of work performed under the contract as a whole.

The government in its response to InterImage's summary judgment motion has attached numerous contract related documents and the sworn statements of Ms. Stacey Ellingsen, the new contracting officer, and Ms. Meredith Caskey, a senior auditor with the DCAA, to show that disputed issues of fact preclude summary judgment.  Specifically, the government argues that the individual delivery orders and not the base contract set ceilings for costs and that InterImage is seeking payments above the ceilings set in the delivery orders in contravention of the limitation of cost and funds clauses in the Federal Acquisition Regulations ("FAR") and incorporated into the contract and delivery orders.  With regard to the fixed fee, the government argues that InterImage's fixed fee also must be adjusted under the terms of the contract because the delivery orders provide limitations inclusive of fee and because InterImage did not perform the

required hours under certain delivery orders and is thus not entitled to the amount of fixed fee now claimed.

Argument was held on May 5, 2017. Thereafter, the parties filed supplemental briefs.[2] For the reasons set forth below, InterImage's motion for summary judgment is **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

The following facts are not in dispute.

_____

[2] It became clear after the argument that the COFD was based on incomplete information and thus was factually incorrect. The record showed that the contracting officer had based her decision on the DCAA audit and the cumulative allowable cost worksheet the DCAA prepared. However, the record also shows that the contracting officer did not use the most up to date information in her final decision. For example, in her two-page decision the contracting officer stated that the amount paid by the government to InterImage under the contract was $18,834,743.08 and that the amount approved for payment was $19,494,766.80. The amounts identified are less than the actual contract amounts or the amounts paid by the government to InterImage. Pl.'s MSJ Ex. 1; Def.'s App. A139-40. The court asked for supplemental briefing to better understand the COFD. The briefing confirmed that the contracting officer did not use the most up to date information and thus could not be relied upon as InterImage indicated in its initial briefing on the motion for summary judgment. Specifically, in its motion for summary judgment, InterImage stated that it "is seeking to obtain the relief that Defendant has already conceded InterImage is entitled to receive in a contracting officer's final decision issued by Defendant on February 3, 2016." Pl.'s MSJ 1. InterImage further stated that the COFD "is absolutely correct" and "[t]his Court has jurisdiction to agree with the contracting officer that InterImage's certified claim is meritorious and to enter judgment in favor of InterImage notwithstanding Defendant's apparent and recently-developed attempt to disavow the COFD." _Id._ at 2. InterImage continued, "[t]he Court has jurisdiction to enforce the COFD," _id._ at 7, and "Defendant should be precluded from taking a position contrary to its COFD," _id._ at 10. InterImage urged the court to "enforce the COFD because the COFD is correct," _id._ at 12, and "enforce the COFD issued by Defendant on February 3, 2016," _id._ at 14.

For the reasons discussed _infra_, the court finds that the errors in the COFD do not preclude the court from ruling on InterImage's summary judgment motion on the legal question underlying the dispute between the parties—namely whether the ceiling amounts provided for in the base contract and its modifications control InterImage's right to payment or whether the ceiling amounts provided for in the individual delivery orders as modified are controlling.

### A.    Base Contract Provisions

On September 27, 2005, the Navy awarded InterImage Contract No. N00140-05-D-0058, a cost-plus-fixed-fee contract "to provide full life cycle software development services . . . for a new Criminal Incident and Case Management System."  Pl.'s MSJ 2-3; Def.'s Resp. 3; Def.'s App. A1, A19.  The contract included, among other things, a schedule of supplies/services and prices/costs and acquisition provisions incorporated by full text and by reference.  Def.'s App. A2, A15, A18, A35.  The contract states on the solicitation/contract form (Item 20) that $1,676,698 was authorized.  In section I of the contract, titled "Contract Clauses," the Navy incorporated by reference several FAR provisions, including FAR § 52.232-20, titled "Limitation of Cost."  Def.'s App. A38.[3]

---

[3] The limitation of cost clause, FAR § 52.232-20, is used "in solicitations and contracts if a fully funded cost-reimbursement contract is contemplated, whether or not the contract provides for payment of a fee."  FAR § 32.706-2(a); *see also* 48 Fed. Reg. 42,102-01-H, 42,561 (Sept. 19, 1983) (directing agencies to insert FAR § 52.232-20 "in solicitations and contracts if a fully funded cost-reimbursement contract is contemplated . . . whether or not the contract provides for payment of a fee"); FAR § 32.703-1(a) ("If the contract is fully funded, funds are obligated to cover the price or target price of a fixed-price contract or the estimated cost and any fee of a cost-reimbursement contract.").

As incorporated into the contract, FAR § 52.232-20 provided in relevant part:

. . . The 60-day period may be varied from 30 to 90 days and the 75 percent from 75 to 85 percent.  "Task Order" or other appropriate designation may be substituted for "Schedule" wherever that word appears in the clause.

Limitation of Cost (APR 1984)

(a) The parties estimate that performance of this contract, exclusive of any fee, will not cost the Government more than . . . the estimated cost specified in the Schedule . . .

(b) The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that—

The contract also incorporates FAR § 52.232-22, titled "Limitation of Funds."  Def.'s

Resp. 17-18; Def.'s App. A38.[4]

Also incorporated by reference is FAR § 52.216-18 regarding Indefinite Delivery

Indefinite Quantity ("IDIQ") contracts.  Def.'s App. A39.  The provision states in

relevant part that "[a]ny supplies and services to be furnished under this contract shall be

---

(1) The costs the contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule; or

(2) The total cost for the performance of this contract, exclusive of any fee, will be either greater or substantially less than had been previously estimated.

(c) As part of the notification, the Contractor shall provide the Contracting Officer a revised estimate of the total cost of performing this contract.

(d) Except as required by other provisions of this contract, specifically citing and stated to be an exception to this clause—

(1) The Government is not obligated to reimburse the Contractor for costs incurred in excess of . . . the estimated cost specified in the Schedule . . . .

Def.'s Resp. 18 n.4; *see also* 48 Fed. Reg. 42,102-01-H, 42,561 (Sept. 19, 1983).

[4] The limitation of funds clause, FAR § 52.232-22, is used "in solicitations and contracts if an incrementally funded cost-reimbursement contract is contemplated."  FAR § 32.706-2(b); *see also* 48 Fed. Reg. 42,102-01-H, 42,562 (Sept. 19, 1983) (directing agencies to insert FAR § 52.232-22 "in solicitations and contracts if an incrementally funded cost-reimbursement contract is contemplated"); FAR § 32.703-1(b) ("If the contract is incrementally funded, funds are obligated to cover the amount allotted and any corresponding increment of fee.").

As incorporated into the contract, FAR § 52.232-22 provided in relevant part that "[t]he Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of (1) the total amount so far allotted to the contract by the Government . . . ."  48 Fed. Reg. 42,102-01-H, 42,562 (Sept. 19, 1983).  The introductory language of FAR § 52.232-22 also provided that "[t]he 60-day period may be varied from 30 to 90 days and the 75 percent from 75 to 85 percent" and that "'Task Order' or other appropriate designation may be substituted for 'Schedule' wherever that word appears in the clause."  *Id.*

ordered by issuance of delivery orders . . .  by the individuals or activities designated in

the Schedule."  FAR § 52.216-18 further provides that "[a]ll delivery orders . . . are

subject to the terms and conditions of this contract" and that "[i]n the event of conflict

between a delivery order . . . and this contract, the contract shall control."

Under the heading "LEVEL OF EFFORT (COST TYPE CONTRACT) (FISC

DET PHILA) (JUN 1995)," the contract provides:

> The level of effort for the performance of this contract during the period
> from the start of contract performance to 6 months thereafter is based upon
> 15,840 estimated manhours of direct labor.  If all options are exercised by
> the government, the level of effort for the performance of this contract will
> be increased by an additional 92,692 estimated manhours of direct labor,
> for a total level of effort of 108,532 estimated manhours of direct labor
> (hereinafter referred to as the "Estimated Total Hours").

Def.'s App. A16 (contract page 16 of 43).

Under the heading "LEVEL OF EFFORT – DELIVERY/TASK ORDER

PERFORMANCE (FISC DET PHIL) (Oct 1992)," the contract also provides that:

> It is understood and agreed that the number of hours and the total dollar
> amount for each labor category specified in any delivery/task order issued
> under this contract are estimates only and shall not limit the use of hours or
> dollar amounts in any labor category which may be required and provided
> for under an individual delivery/task order.  Accordingly, in the
> performance of any delivery/task order, the contractor shall be allowed to
> adjust the quantity of labor hours provided for within labor categories
> specified in the order provided that in so performing the contractor shall not
> in any event exceed the ceiling price restrictions of any order, including
> modifications thereof.

Id. at A17 (contract page 17 of 43).

The contract further states, under the heading "PAYMENT OF FIXED FEE

(INDEFINITE DELIVERY, COST PLUS FIXED FEE) (FISC DET PHILA) (OCT

1992)":

> The fixed fee for work performed under this contract is $120,496.15*
> provided that approximately 15,840 hours of technical effort are employed
> by the contractor in performance of this contract. If substantially fewer
> than 15,840 hours of said services are so employed, the fixed fee shall be
> equitably reduced to reflect the reduction of work. The Government shall
> make monthly payments of the fixed fee at the rate of $ 7.60* per direct
> labor hour invoiced by the contractor. All payments shall be in accordance
> with the provisions of FAR 52.216-8, "Fixed Fee," and FAR 52.216-7,
> "Allowable Cost and Payment." The total of all such payments shall not
> exceed eighty-five (85%) percent of the fixed fee specified under each
> applicable delivery/task order. Any balance of fixed fee due the contractor
> shall be paid to the Contractor, and any over-payment of fixed fee shall be
> repaid to the Government by the Contractor, or otherwise credited to the
> Government at the time of final payment.

*Id.*

Under the heading "LIMITATION OF LIABILITY - INCREMENTAL

FUNDING (NAVSUP 5252.232-9400) (JAN 1992)," the contract also provides:

> This contract is incrementally funded and the amount currently available
> for payment hereunder is limited to $ __ * __ inclusive of fee. It is
> estimated that these funds will cover the cost of performance through
> _____ ** _____. Subject to the provisions of the clause entitled
> "Limitation of Funds" (FAR 52.232-22) of the General Provisions of this
> contract, no legal liability on the part of the Government for payment in
> excess of $ __ * __ shall arise unless additional funds are made available
> and are incorporated as a modification to this contract.
>
> NOTE: Individual Delivery Orders may be incrementally funded and will
> provide[] the necessary information.

*Id.* at A30 (contract page 30 of 43).

The contract also provides accounting and appropriation data. It provides an

amount of $167,669.80 and states that "[t]his funding constitutes the contract minimum

and will be utilized to fund individual delivery orders until it is exhausted." *Id.* at A43

(contract page 43 of 43).

### B. Modifications to the Base Contract

There were several modifications to the contract.  Def.'s App. A44-70.

Modification No. P00001, dated December 22, 2005, increased the total contract cost

from $1,676,698.00 to $1,700,240.55, added a line item, and revised the schedule of

supplies/services.  *Id.* at A44-53.

Under the heading "LEVEL OF EFFORT (COST TYPE CONTRACT) (FISC

DET PHILA) (JUN 1995)," Modification No. P00001 to the contract provides:

> The level of effort for the performance of this contract during the period
> from the start of contract performance to 6 months thereafter is based upon
> 16,080 estimated manhours of direct labor.  If all options are exercised by
> the government, the level of effort for the performance of this contract will
> be increased by an additional 92,692 estimated manhours of direct labor,
> for a total level of effort of 108,772 estimated manhours of direct labor
> (hereinafter referred to as the "Estimated Total Hours").

*Id.* at A45-46.

Under the heading "PAYMENT OF FIXED FEE (INDEFINITE DELIVERY,

COST PLUS FIXED FEE) (FISC DET PHILA) (OCT 1992)," Modification No. P00001

to the contract also provides:

> The fixed fee for work performed under this contract is $122,240.04*
> provided that approximately 16,080 hours of technical effort are employed
> by the contractor in performance of this contract.  If substantially fewer
> than 16,080 hours of said services are so employed, the fixed fee shall be
> equitably reduced to reflect the reduction of work.  The Government shall
> make monthly payments of the fixed fee at the rate of $ 7.60* per direct
> labor hour invoiced by the contractor.  All payments shall be in accordance
> with the provisions of FAR 52.216-8, "Fixed Fee," and FAR 52.216-7,
> "Allowable Cost and Payment."  The total of all such payments shall not

exceed eighty-five (85%) percent of the fixed fee specified under each applicable delivery/task order.  Any balance of fixed fee due the contractor shall be paid to the Contractor, and any over-payment of fixed fee shall be repaid to the Government by the Contractor, or otherwise credited to the Government at the time of final payment.

*Id.* at A47.

Modification No. P00002, dated February 27, 2006, states that "[t]he total cost of this contract was increased by $612,241.56 from $1,700,240.55 (EST) to $2,312,482.11 (EST)" (although it also states that "the total maximum value of this contract is unchanged by this modification").  *Id.* at A55.  The modification revised the "estimated/max cost," fixed fee, and total cost of one line item and added a new line item. *Id.* at A54-56.  Under the heading "PAYMENT OF FIXED FEE (INDEFINITE DELIVERY, COST PLUS FIXED FEE) (FISC DET PHILA) (OCT 1992)," Modification No. P00002 states:

The fixed fee for work performed under this contract is $122,240.04* provided that approximately 16,080 hours of technical effort are employed by the contractor in performance of this contract.  If substantially fewer than 16,080 hours of said services are so employed, the fixed fee shall be equitably reduced to reflect the reduction of work.  The Government shall make monthly payments of the fixed fee at the rate of $ 7.60* per direct labor hour invoiced by the contractor.  All payments shall be in accordance with the provisions of FAR 52.216-8, "Fixed Fee," and FAR 52.216-7, "Allowable Cost and Payment."  The total of all such payments shall not exceed eighty-five (85%) percent of the fixed fee specified under each applicable delivery/task order.  Any balance of fixed fee due the contractor shall be paid to the Contractor, and any over-payment of fixed fee shall be repaid to the Government by the Contractor, or otherwise credited to the Government at the time of final payment.

*Id.* at A55-56.

Modification No. P00003, dated March 23, 2006, was a unilateral modification to extend the term of the contract. *Id.* at A57. The summary of changes states that "[t]he total MAXIMUM cost of this contract was increased by $3,896,844.01 from $2,312,482.11 (EST) to $6,209,326.12 (EST)." *Id.* at A58.

Modification No. P00004, dated March 29, 2007, was a bilateral modification to exercise Option II to extend the term of the contract. *Id.* at A59. The summary of changes states that "[t]he total cost of this contract was increased by $2,155,790.87 from $6,209,326.12 (EST) to $8,365,116.99 (EST)." *Id.* at A60.

Modification No. P00005, dated August 31, 2007, was a unilateral modification to exercise Option III to extend the term of the contract. *Id.* at A62. The summary of changes states that "[t]he total cost of this contract was increased by $1,503,152.61 from $8,365,116.99 (EST) to $9,868,269.60 (EST)." *Id.* at A63.

Modification No. P00006, dated February 26, 2008, was a unilateral modification to exercise Options IV and V to extend the term of the contract. *Id.* at A64. The description of the modification states that "funding will be provided on individual delivery orders." *Id.* The summary of changes states that "[t]he total cost of this contract was increased by $2,241,544.41 from $9,868,269.60 (EST) to $12,109,814.01 (EST)." *Id.* at A65.

Modification No. P00007, dated June 23, 2008, was a bilateral modification "to add hours to the contract that will be available for ordering." *Id.* at A67. The summary of changes states that "[t]he total cost of this contract was increased by $9,787,642.10 from $12,109,814.01 (EST) to $21,897,456.11 (EST)." *Id.* at A68. The summary of

changes also lists changes in the descriptions, estimated/max costs, fixed fees, and total costs for several line items and provides new "level of effort" figures for various labor categories. *Id.* at A68-69.

Under the heading "LEVEL OF EFFORT (COST TYPE CONTRACT) (FISC DET PHILA) (JUN 95)," Modification No. P00007 lists labor categories with associated total hours and states that "[t]his increases the total level of effort of the contract by 93,813 from 108,772 to 202,585." *Id.* at A69.

In addition, under the heading "LEVEL OF EFFORT - DELIVERY/TASK ORDER PERFORMANCE (FISC DET PHILA) (OCT 1992)," Modification No. P00007 provides as follows:

> It is understood and agreed that the number of hours and the total dollar amount for each labor category specified in any delivery/task order issued under this contract are estimates only and shall not limit the use of hours or dollar amounts in any labor category which may be required and provided for under an individual delivery/task order. Accordingly, in the performance of any delivery/task order, the contractor shall be allowed to adjust the quantity of labor hours provided for within labor categories specified in the order provided that in so performing the contractor shall not in any event exceed the ceiling price restrictions of any order, including modifications thereof.

*Id.* at A69.

Under the heading "PAYMENT OF FIXED FEE (INDEFINITE DELIVERY, COST PLUS FIXED FEE) (FISC DET PHILA) (OCT 1992)," Modification No. P00007 also provides:

> The fixed fee (on labor) for work performed under this contract is $702,659.37* provided that approximately 93,813 hours of technical effort are employed by the contractor in performance of this contract. If substantially fewer than 93813 hours of said services are so employed, the

fixed fee shall be equitably reduced to reflect the reduction of work.  The Government shall make monthly payments of the fixed fee at the rate of $ 7.49* per direct labor hour invoiced by the contractor.  All payments shall be in accordance with the provisions of FAR 52.216-8, "Fixed Fee," and FAR 52.216-7, "Allowable Cost and Payment."  The total of all such payments shall not exceed eighty-five (85%) percent of the fixed fee specified under each applicable delivery/task order.  Any balance of fixed fee due the contractor shall be paid to the Contractor, and any over-payment of fixed fee shall be repaid to the Government by the Contractor, or otherwise credited to the Government at the time of final payment.

The fixed fee on additional OPN Hardware / Software is $7,770.00.

*Id.* at A69-70.

## C.   Delivery Orders

The government issued eleven delivery orders under the contract.  Def.'s Resp. 3. At oral argument, the government proffered a copy of Delivery Order No. 0002, dated March 28, 2006, and seven modifications of that delivery order.[5]

Under the heading "LEVEL OF EFFORT (COST TYPE CONTRACT) (FISC DET PHILA) (JUNE 1995)," Delivery Order No. 0002 provides that the estimated total hours for the delivery order would be 27,552.  Delivery Order No. 0002 at 4-5 of 6.

Under the heading "PAYMENT OF FIXED FEE (INDEFINITE DELIVERY, COST PLUS FIXED FEE) (FISC DET PHILA) (OCT 1992)," Delivery Order No. 0002 provides:

The fixed fee for work performed under this contract is $213,941.01 provided that approximately 27,552 hours of technical effort are employed

---

[5] InterImage objected to the government's reliance on documents at oral argument that had not been attached to its opposition to summary judgment.  While troubled by the government's failure to follow the court's rules, the court has reviewed Delivery Order No. 0002 and the modifications provided for purposes of understanding the terms of individual delivery orders to the base contract.

by the contractor in performance of this contract.  If substantially fewer than 27,552 hours of said services are so employed, the fixed fee shall be equitably reduced to reflect the reduction of work.  The Government shall make monthly payments of the fixed fee at the rate of $ 7.63 per direct labor hour invoiced by the contractor.  All payments shall be in accordance with the provisions of FAR 52.216-8, "Fixed Fee," and FAR 52.216-7, "Allowable Cost and Payment."  The total of all such payments shall not exceed eighty-five (85%) percent of the fixed fee specified under each applicable delivery/task order.  Any balance of fixed fee due the contractor shall be paid to the Contractor, and any over-payment of fixed fee shall be repaid to the Government by the Contractor, or otherwise credited to the Government at the time of final payment.

*Id.* at 5 of 6.

Under the heading "LIMITATION OF LIABILITY – INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992)," Delivery Order No. 0002 provides:

This order is incrementally funded and the amount currently available for payment hereunder is limited to $745,036.50 inclusive of any fee.  It is estimated that these funds will cover the cost of performance through 27 June 2006.  Subject to the provisions of the clause entitled "Limitations of Funds" (FAR 52.232-22) of the General Provisions of the contract, no legal liability on the part of the Government for payment in excess of $745,036.50 shall arise unless additional funds are made available and are incorporated as a modification of this order.

*Id.*  Delivery Order No. 0002 also provides accounting and appropriation data.  *Id.* at 6 of 6.

Modification No. 01 to Delivery Order No. 0002, dated April 20, 2006, changed the provision titled "LIMITATION OF LIABILITY – INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992)," increasing the total funded amount and extending the applicable period of performance through July 31, 2006.  Modification No. 01 to Delivery Order No. 0002 at 2 of 2.  The summary of changes states "[a]s a result of

this modification, the total funded amount for this document was increased by

$208,453.97 from $745,035.00 to $953,488.97." *Id.*

Modification No. 02 to Delivery Order No. 0002, dated June 7, 2006, revised the

provisions titled "LEVEL OF EFFORT (COST TYPE CONTRACT) (FISC DET

PHILA) (JUNE 1995)," "PAYMENT OF FIXED FEE (INDEFINITE DELIVERY,

COST PLUS FIXED FEE) (FISC DET PHILA) (OCT 1992)," and "LIMITATION OF

LIABILITY – INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992),"

increasing the estimated number of hours to 28,392, increasing the fixed fee to

$220,350.21, and increasing the total funded amount.  Modification No. 02 to Delivery

Order No. 0002 at 2-4 of 4.  The summary of changes states that "[t]he total cost of this

contract was increased by $86,665.42 from $2,918,203.66 (EST) to $3,004,869.08

(EST)" and that "[a]s a result of this modification, the total funded amount for this

document was increased by $1,351,271.60 from $953,488.97 to $2,304,760.57." *Id.*

Modification No. 03 to Delivery Order No. 0002, dated September 18, 2006,

amended the same three provisions, increasing the estimated number of hours to 28,645,

increasing the fixed fee to $222,280.60, and increasing the total funded amount.

Modification No. 03 to Delivery Order No. 0002 at 5-6 of 6.  The summary of changes

states that "[t]he total cost of this contract was increased by $659,710.51 from

$3,004,869.08 (EST) to $3,664,579.59 (EST)" and that "[a]s a result of this modification,

the total funded amount for this document was increased by $1,093,018.99 from

$2,304,760.57 to $3,397,779.56." *Id.* at 2-3 of 6.  The limitation of liability provision

was also revised to state that "[i]t is estimated that these funds will cover the cost of performance through 27 March 2007." *Id.* at 6 of 6.

Modification No. 04 to Delivery Order No. 0002, dated September 27, 2006, revised the provision titled "LIMITATION OF LIABILITY – INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992)," increasing the total funded amount and extending the period of performance through June 27, 2006. Modification No. 04 to Delivery Order No. 0002 at 2 of 2. The summary of changes states that "[a]s a result of this modification, the total funded amount for this document is increased by $10,343.38 from $3,397,779.56 to $3,408,122.94." *Id.*

Modification No. 05 to Delivery Order No. 0002, dated November 22, 2006, revised the provision titled "LIMITATION OF LIABILITY – INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992)," to increase the total funded amount and extend the period of performance through March 27, 2007. Modification No. 05 to Delivery Order No. 0002 at 3 of 3. The summary of changes states that "[t]he total cost of this contract is increased by $397,634.22 from $3,664,579.59 (EST) to $4,062,213.81 (EST)" and that "[a]s a result of this modification, the total funded amount for this document is increased by $1,160,633.22 from $3,408,122.94 to $4,568,756.16." *Id.* at 2-3 of 3.

Modification No. 06 to Delivery Order No. 0002, dated May 8, 2007, revised the provisions titled "LEVEL OF EFFORT (COST TYPE CONTRACT) (FISC DET PHILA) (JUNE 1995)," "PAYMENT OF FIXED FEE (INDEFINITE DELIVERY, COST PLUS FIXED FEE) (FISC DET PHILA) (OCT 1992)," and "LIMITATION OF

LIABILITY – INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992),"
increasing the estimated number of hours to 41,716, increasing the fixed fee to
$318,293.08 ("represent[ing] only the fee on labor"), and increasing the total funded
amount.  Modification No. 06 to Delivery Order No. 0002 at 4-5 of 6.  The summary of
changes states that "[t]he total cost of this contract was increased by $1,216,921.37 from
$4,062,213.81 (EST) to $5,279,135.18 (EST)" and that "[a]s a result of this modification,
the total funded amount for this document was increased by $710,379.02 from
$4,568,756.16 to $5,279,135.18."  *Id.* at 2, 5 of 6.

Modification No. 07 to Delivery Order No. 0002, dated August 29, 2007, does not
amend the provisions described above.  The description of the modification states that
"[t]he purpose of this modification is to deobligate excess R&D and O&M,N funding
from delivery order 0002 in order to make that funding available for current delivery
orders."  Modification No. 07 to Delivery Order No. 0002 at 1 of 2.  The summary of
changes states that "[a]s a result of this modification, the total funded amount for this
document was decreased by $15,043.84 from $5,279,135.18 to $5,264,091.34."  *Id.* at 2
of 2.

**D.      InterImage's Performance and Claims for Payment**

InterImage completed its performance under the contract in 2010.  Def.'s Resp. 2.
InterImage submitted its final incurred cost proposals and executed its certificate of final
indirect costs in August 2010.  *Id.* at 4.  In September 2012, following an audit by the
DCAA, InterImage entered into an agreement accepting DCAA's proposed final indirect
rates for each applicable fiscal year.  Pl.'s MSJ 3, Ex. 12 Attach. 2; Def.'s Resp. 4.  A

"schedule of cumulative allowable cost" states that the "total direct & indirect costs using settled rates" for the contract at issue in this case were $20,055,414 for costs and $1,499,638 for fees.  Pl.'s MSJ Ex. 12 Attach. 2.  A note to the schedule states that "[t]he cumulative allowable amounts in [the total direct and indirect costs using settled rates] column are not-to-exceed contract ceiling amounts."  *Id.*  The schedule identified each year of performance but did not separate out any individual delivery orders.

In January 2013, InterImage submitted a final invoice for $990,528.15 and related close-out documents.  Pl.'s MSJ 3, Ex. 3; Def.'s Resp. 4.  As noted above, in its invoice, InterImage stated that the "funded" total for the contract was $23,155,514.01, including $21,655,876.37 for costs and $1,499,637.64 for fees, and that the "settled" total was $21,555,051.64, including $20,055,414.00 for costs and $1,499,637.64 for fees.  Pl.'s MSJ Ex. 3.  InterImage further stated that it had previously invoiced and been paid $20,564,478.32, including $19,304,651.49 for costs and $1,259,826.83 for fees.  Pl.'s MSJ Ex. 3.  Based on its current invoice, InterImage claimed that it was owed $990,528.15.  Pl.'s MSJ Ex. 3.

In June 2013, in response to the Navy's comments that funding had been made to individual delivery orders, InterImage revised and resubmitted its invoice as multiple invoices, one for each of the eleven delivery orders.  Pl.'s MSJ Ex. 4.  In August 2013, per the government's instructions, InterImage resubmitted its invoices to the DCMA and the government's Wide Area Workflow ("WAWF") system.  Pl.'s MSJ Ex. 4.

Between September 12, 2013 and November 19, 2013 the Navy made partial payments, totaling approximately $295,000, to InterImage on those invoices.  Pl.'s MSJ Ex. 8; Def.'s Resp. 4.

On June 10, 2014, the contracting officer issued two final decisions imposing $106,477.97 in penalties and interest for 2007 and $12,096.81 in penalties and interest for 2008.  Def.'s App. A71, A77.  On June 8, 2015, InterImage filed the first complaint in this case challenging the June 10, 2014 final decisions.  ECF No. 1.  On May 9, 2016, the court remanded the case to the contracting officer.  ECF No. 33.  On June 16, 2016, the contracting officer granted InterImage's request for a waiver of the penalties and interest pursuant to FAR § 42.709-5(c).  Def.'s App. A367-73.

While disputing the penalties, InterImage continued its efforts to collect the remaining amount on its final invoice.  Def.'s Resp. 5.  On September 23, 2014, InterImage submitted a final invoice on the contract for $697,926.97.  *Id.*  The government explained that it was unable to make additional payments because funding for the contract had been de-obligated and thus the government needed to find funding from another source.  Pl.'s MSJ Ex. 9, 10, 11; Def.'s App. A106.

It was at this time that issues first arose between the government and InterImage over whether the ceilings in the delivery orders precluded any additional payments to InterImage.  Def.'s App. A106-10.  In January 2015, the Director of the DCMA's Contract Closeout Center, Mr. Fred Roitz, explained to Ms. Leslie Steele, InterImage's CEO, that, after reviewing the contract, delivery orders, and modifications to the contract and delivery orders, he believed InterImage had received payments in excess of the

delivery order ceilings in several instances.  Mr. Roitz stated that "[p]art of the issue

appears to be DCAA's audit did not limit the direct and indirect cost to the contract

ceiling and funding limitations for each [delivery order] on The Schedule of Cumulative

Allowable Cost by Contract."  *Id.* at A109.  Mr. Roitz stated that he believed the DCAA's

schedule of cumulative allowable cost was incorrect in that the worksheet should have

included entries for contract ceilings for each delivery order based on three contract

provisions: (1) "Base Contract – Limitation of Cost (Apr 1984)"; (2) "Base Contract –

Limitation of Funds (Apr 1984)"; and (3) "Task Orders – Limitation of Liability –

Incremental Funding (NACSUP 5252.232-9400) (Jan 1992)."  *Id.* at A109.

In January 2015, Ms. Steele sought assistance from elected officials in her effort to

get paid the amount remaining on her final invoice.  *Id.* at A111-16.  In a letter to Senator

Tim Kaine dated January 23, 2015, Ms. Steele stated that the government was refusing to

pay InterImage and that the government had made mistakes in administering and

deobligating funds.  *Id.* at A115.  Ms. Steele also noted that DCMA was attempting to

treat each delivery order as a separate contract despite:

- the existence of the Basic Contract which established the obligation of the Federal Government to pay legitimate costs

- delivery order funding documents that refer to the Basic Contract and treat each as a modification to the contract obligations versus as separate funding streams

- contract cited FAR provisions 52.216-7, 52.216-8 and 52.232-22 which reference determination of costs at the contract level.

*Id.* at A115.

In March 2015, Mr. Roitz consulted with the DCAA regarding the cost ceilings in the delivery orders and the application of the limitation of cost and limitation of funds clauses to the delivery orders.  *Id.* at A117.  DCAA stated that although DCAA had "potentially made an 'error' on the [cumulative allowable cost worksheet] . . . we all agree that the [cumulative allowable cost worksheet] is only a guideline for the Contracting Officer and the actual contract terms and ceiling limitations hold the ultimate authority."  *Id.*  Mr. Roitz asked DCAA to "look at the [cumulative allowable cost worksheet] and insert the Column Titled 'Less: Contract Limitations'" the limitation per Task Order . . . ."  *Id.* at A120.  On March 23, 2015, DCAA sent Mr. Roitz a revised worksheet with the additional column Mr. Roitz had requested.  *Id.* at A123-24.  DCAA stated that "[t]he ceiling limitation column . . . should subtract out any costs in excess of the funded amount per the latest delivery order modification."  *Id.* at A123.

On August 18, 2015, InterImage submitted a certified claim for $695,684.48 to the contracting officer.  Pl.'s MSJ Ex. 12, Def.'s App. A130.  InterImage states that its certified claim is based on an overall contract ceiling of $21,555,007, including $20,055,369 for costs and $1,499,638 for its fee, not taking into account the alleged contract limitations applicable to individual delivery orders.  Pl.'s Reply 5-9.[6]  InterImage further states that its certified claim is based on total payments of $20,859,323, equal to $20,564,478 paid before the DCAA audit, plus $294,500 in post-audit incremental

---

[6] InterImage states that the total cost amount is $45 less than the amount it agreed to in September 2012 due to a transposed figure in the DCAA's work papers.  Pl.'s Reply 7.

payments, plus $344 paid before InterImage submitted its final invoice.  *Id.* at 8-9,

Second Steele Decl. ¶ 17.

On February 3, 2016, the contracting officer issued a final decision finding that

InterImage was due $660,023.72 plus $40,123.89 in interest for a total of $700,147.61.

Pl.'s MSJ Ex. 1; Def.'s App. A139.  In the two-page decision, which did not specify

separately costs and fee, the contracting officer identified the amount approved for each

year 2006 through 2009 based on total contract amounts and not individual delivery

orders.  Pl.'s MSJ Ex. 1; Def.'s App. A139.  The contracting officer stated that the

amount paid by the government to InterImage under the contract was $18,834,743.08 and

that the amount approved for payment was $19,494,766.80.  Pl.'s MSJ Ex. 1; Def.'s App.

A139-40.  After adding interest from January 8, 2013, the contracting officer found that

the amount due InterImage was $700,147.61.  Pl.'s MSJ Ex. 1; Def.'s App. A140.  The

contracting officer did not mention the issues of deobligated funding or cost ceilings.

Pl.'s MSJ Ex. 1; Def.'s App. A139-40.

As noted above, InterImage and DCMA attempted to arrange for payment

pursuant to the COFD.  However, the Navy did not pay InterImage because the funding

assigned to InterImage's delivery orders had expired and had been de-obligated.  The

matter was assigned to a different contracting officer, Ms. Stacey Ellingsen, for purposes

of resolving the payment issue, in August 2016.  Def.'s App. A135.  In mid-September

through early October 2016, Ms. Ellingsen questioned whether the previous contracting

officer had properly applied certain contract provisions in reaching the February 3, 2016

COFD.  Def.'s Resp. 9-12.  Ms. Ellingsen indicated, based on the cumulative allowable

cost worksheet Mr. Roitz had used, that InterImage had not properly taken into account the contract's limitation of cost and limitation of funds provisions applicable to the individual delivery orders.  Def.'s Resp. 10.  In an e-mail to InterImage's staff accountant dated October 7, 2016, Ms. Ellingsen stated that she had "found discrepancies" regarding contract limitations and that "[i]f we can address each of the Task Orders individually, I will be able to place any money owed on the contract at that time."  Def.'s App. A241.

### E.    Summary Judgment Filings

InterImage filed the pending motion for partial summary judgment for breach of contract under Count I on November 4, 2016 with supporting attachments.  On December 13, 2016, the government filed its response to InterImage's motion for summary judgment.  The government also filed an appendix and a supplement to the appendix.  ECF Nos. 53, 55.[7]

In its response, the government provided the declaration from the new DCMA administrative contracting officer, Ms. Ellingsen, dated December 12, 2016, and a declaration from the DCAA senior auditor, Meredith Caskey, dated December 9, 2016.  Def.'s App. A248, A335.

In her declaration, Ms. Ellingsen states that she read each delivery order and modification and sought the assistance of the DCAA to determine whether InterImage

---

[7] In addition, on December 13, 2016, the government filed a motion to dismiss Counts II, III, and IV of the complaint in Case No. 16-1300C for lack of jurisdiction or failure to state a claim.  ECF No. 52.  On January 4, 2017, the court granted InterImage's unopposed motion to stay briefing on the government's motion to dismiss until resolution of InterImage's motion for summary judgment on Count I of the complaint.  ECF No. 59.

was underpaid or overpaid.  Ms. Ellingsen states that "Task Orders 0001 and 0002 had bi-lateral modifications de-obligating excess funds, lowering the Task Order ceiling to accommodate new work being issued on new task orders." *Id.* at A250.  Ms. Ellingsen also states that "[i]n this case, each Task Order receives a 'flow-down' of clauses that define the limit of the authority to execute the contract vehicle, i.e. total ceiling for IDIQ will govern amount competition and acquisition plan." *Id.* at A251-252.  Ms. Ellingsen states that "[e]ach Task Order issued under the IDIQ is a Contract, defining any terms and conditions that are specific to that effort, such as ceilings and fees." *Id.* at 252.  Ms. Ellingsen also states in her December 12, 2016 declaration that she "provided to Ms. Caskey the allowable fee using the total direct labor hours stated in the final voucher * unit cost, unless it exceeds the funding ceiling." *Id.* at A254.  Ms. Ellingsen continues, "[a]lthough InterImage believes that it is allowed to recover the total fee under the Contract, it is my position that the allowed fee should be based upon the actual hours incurred, taking into consideration the limit prescribed by each [delivery order]." *Id.*

Ms. Caskey, the new DCAA auditor, using the invoices provided by InterImage and information in payment files, concluded that InterImage had been overpaid by $434,211. *Id.* at A345, A358.  Ms. Caskey states in her declaration that she did not perform the original audit involved in this case and was similarly unable to locate the information used by prior auditors.  Ms. Caskey states that she determined funding ceilings for each delivery order "by reviewing and summarizing pertinent terms of contract number N00140-05-D-0058 and all the subsequent modifications to this contract." *Id.* at A339.  Ms. Caskey states that she then determined disbursement

amounts based on information she received from Ms. Ellingsen and Defense Finance and

Accounting Services ("DFAS"), and determined InterImage's incurred allowable costs

based on her review of invoices attached to InterImage's motion for summary judgment.

*Id.* at A339-40.  Based on this information, Ms. Caskey concludes that InterImage's

incurred costs were above funding ceilings for delivery orders 1 through 8 and below

funding ceilings for delivery orders 9 through 11.  *Id.* at A340-41, A358.  Ms. Caskey

also states that the total authorized fee in her worksheet was calculated by DCMA.  *Id.* at

A342 n.2.  According to the government's worksheets, the overall contract ceiling is

$20,422,731, including $19,376,352 for costs and $1,046,379 for fees and taking into

account the alleged contract limitations applicable to delivery orders, and the amount

disbursed is $20,856,943.  *Id.* at A346, A358.[8]

In her December 12, 2016, declaration, Ms. Ellingsen accepted Ms. Caskey's

evaluation and concluded that InterImage had been overpaid.  *Id.* at A254.  Ms. Ellingsen

states that "[b]ased on the evaluation of the known costs, [she] identified that the

contractor owes the Government $434,211."  *Id.*

---

[8] Attached to the supplemental briefing (ECF No. 67, 69) provided after the argument, the court received another sworn statement from Ms. Caskey (Second Declaration of Meredith Caskey, ECF No. 67-2, App. A3-12) offering her explanation of the COFD and two new sworn statements.  One is from Lewis R. Sully with the DCMA who states that he has reviewed Ms. Caskey's work and concurs in her determination and that of the contracting officer, Ms. Ellingsen, that InterImage is not entitled to additional payments because of the limitations in each of the delivery orders.  The other is from John Scarsellone, who is also with the DCMA. His statement adds some history regarding DCMA's consideration of InterImage's claim and states that he concurs with Ms. Ellingsen's conclusion that InterImage's claim is limited by the ceiling amounts in the delivery orders.

InterImage filed its reply in support of its motion for summary judgment on January 18, 2017. ECF No. 61. In response to the government's declarations, InterImage states that there is virtually no difference between the government and InterImage with regard to the total cost and fee figures set forth in the December 8, 2016 cumulative allowable cost worksheet submitted by the government on the base contract with modifications save for a $2,380 difference on an invoice. Pl.'s Reply 2; Def.'s App. 358.

InterImage also provides a declaration by its CEO, Ms. Steele, dated January 18, 2017. Pl.'s Reply Second Steele Decl. 1. Ms. Steele states in her January 18, 2017 declaration that under the contract at issue there were several modifications to the contract, eleven delivery orders, and multiple modifications to each delivery order. *Id.* ¶ 10. Ms. Steele further states that the "delivery orders were generally used to cover different periods of performance by exercising options on the Contract, different stages of the software development, and/or to apply additional funding" to what Ms. Steele characterizes as a "single, unified piece of work." *Id.* ¶ 11. According to Ms. Steele, InterImage and the contracting officer at the time "did not treat the delivery orders as separate contracts, each with their own funding" and "[t]he contracting officer frequently moved funding from one delivery order to another in order to capture different sources of funding and increase the overall amount of funding available for the Contract." *Id.* ¶ 12. Ms. Steele states that InterImage personnel closely watched costs in light of the contract's overall funding ceiling and "let [the contracting officer] know when additional funding would be needed so that he could execute a modification to add additional funding." *Id.*

¶¶ 13-14.  Ms. Steele also states that InterImage never submitted an invoice for costs in excess of the amount available for the contract or any delivery order.  *Id.* ¶¶ 14-16.[9]

## II.   JURISDICTION AND LEGAL STANDARDS

Under the Tucker Act, 28 U.S.C. § 1491(a)(1), this court has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ."  The Contract Disputes Act ("CDA"), 41 U.S.C. § 7104(b)(1), provides that "in lieu of appealing the decision of a contracting officer under [41 U.S.C. § 7103] to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary."

There is no dispute that the Tucker Act and the CDA provide jurisdiction for the court to hear InterImage's claim for payment.  InterImage submitted a proper claim and the contracting officer issued a final decision.  *See Guardian Angels Med. Serv. Dogs, Inc. v. United States*, 809 F.3d 1244, 1247 (Fed. Cir. 2016) ("[O]nly final contracting officer decisions may be appealed." (citations omitted)); *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) ("Jurisdiction [under the CDA] requires both that a claim meeting certain requirements have been submitted to the relevant

---

[9] Attached to InterImage's supplemental brief following the argument, InterImage included an e-mail from Ms. Steele to her counsel.  She explains that the schedule used by the contracting officer was correct but not up to date and provides her explanation of what payments were made on the contract and what amounts remain unpaid.  ECF No. 66.

contracting officer and that the contracting officer have issued a final decision on that claim." (citation omitted)).

Under Rule 56(a) of the Rules of the United States Court of Federal Claims ("RCFC"), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could "affect the outcome of the suit under the governing law." *Id.* In determining whether there is a genuine issue of material fact, "[o]n a motion for summary judgment, 'all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party.'" *Frankel v. United States*, 842 F.3d 1246, 1249-50 (Fed. Cir. 2016) (quoting *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994)).

## III.   DISCUSSION

### A.   The Individual Delivery Orders Limit Payment to InterImage for Both Costs and Fees.

At the heart of the dispute between the parties on summary judgment is whether InterImage's right to payment is governed by only the base contract or also by the individual delivery orders. The contract clauses that the government argues limit payment to InterImage are the limitation of cost and limitation of funds clauses together with NAVSUP 5252.232-9400 (JAN 1992). FAR § 52.232-20, titled "Limitation of

Cost," is used in fully funded cost-reimbursement contracts, *see* FAR § 32.706-2(a), and "limits the government's payment to the costs as originally estimated unless the contractor notifies the government of any prospective overrun in advance." *Titan Corp. v. West*, 129 F.3d 1479, 1480 (Fed. Cir. 1997).  The notice requirement "protects the contractor by either providing assurance of reimbursement or permitting the contractor to cease performance.  It protects the government from paying more than it had expected for the project.  The choice as to whether to incur additional costs is the government's, not the contractor's." *Id.* at 1482; *see also Advanced Materials, Inc. v. Perry*, 108 F.3d 307, 310 (Fed. Cir. 1997) ("Under the unambiguous language of the cost limitation provision, the estimated cost shown in the contract constitutes a ceiling on the government's contractual liability.").  FAR § 52.232-22, titled "Limitation of Funds," is used in incrementally funded cost-reimbursement contracts, *see* FAR § 32.706-2(b), and "provides that the government's liability for a contract is limited to the 'total amount allotted by the government to the contract,' unless notice is given and more money is authorized.'" *Viacom, Inc. v. United States*, 70 Fed. Cl. 649, 657 (2006), *on reconsideration sub nom. CBS Corp. v. United States*, 75 Fed. Cl. 498 (2007).  Under the "LIMITATION OF LIABILITY - INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992)," the base contract provided:

> This contract is incrementally funded and the amount currently available for payment hereunder is limited to $ __ * __ inclusive of fee.  It is estimated that these funds will cover the cost of performance through _____ ** _____.  Subject to the provisions of the clause entitled "Limitation of Funds" (FAR 52.232-22) of the General Provisions of this contract, no legal liability on the part of the Government for payment in

excess of $ __ * __ shall arise unless additional funds are made available and are incorporated as a modification to this contract.

NOTE: Individual Delivery Orders may be incrementally funded and will provide[] the necessary information.

Def.'s App. A30 (contract page 30 of 43).

As discussed above, the government states in sworn declarations that each of the

delivery orders contained the incremental funding clause, NAVSUP 5252.232-9400. *See*

*id.* at A250; Sully Decl. ¶ 10. For example, Delivery Order No. 0002 as modified

included the following provision under the heading "LIMITATION OF LIABILITY –

INCREMENTAL FUNDING (NAVSUP 5252.232-9400) (JAN 1992)":

This order is incrementally funded and the amount currently available for payment hereunder is limited to $5,279,135.18 inclusive of any fee. It is estimated that these funds will cover the cost of performance through 27 March 2007. Subject to the provisions of the clause entitled "Limitations of Funds" (FAR 52.232-22) of the General Provisions of the contract, no legal liability on the part of the Government for payment in excess of $5,279,135.18 shall arise unless additional funds are made available and are incorporated as a modification of this order.

Modification No. 06 to Delivery Order No. 0002 at 5 of 6.

It is not disputed that the government may apply the limitation of cost clause or

limitation of funds clause to individual delivery orders. When the government does so,

those clauses govern each individual delivery order. *See e.g.*, *International Technology*

*Corp.*, ASBCA No. 54136, 06-2 BCA ¶ 33,348. InterImage argues that in this case, the

government did not expressly incorporate the limitation of cost or funds clauses into the

delivery orders and thus the base contract governs, citing *Boeing Co.*, ASBCA No.

57409, 14-1 BCA ¶ 35,474. In *Boeing*, the Armed Services Board of Contract Appeals

found that a limitation of funds clause in a base contract applied to the funding of the

contract as a whole, and not to individual engineering assignments under the contract, in

part because the government did not expressly substitute "task order" or "engineering

assignment" or any other such term for "Schedule." *Id.*  However, in *Boeing*, the Board

also found that the contract "included a specific provision for limitation of funds in

individual engineering assignments," titled the "H-841 clause," which provided that

"[n]otification will be given to the PCO upon 85% usage of the funds obligated and upon

100% usage the contractor will cease work until additional funds are provided." *Id.*  The

Board found that "[g]iving a reasonable meaning to both the [limitation of funds] clause

and the H-841 clause, . . . the [limitation of funds] clause applies to the funding of the

contract Schedule as a whole and the H-841 clause governs the funding allotted to each

individual engineering assignment." *Id.*

Here, the court finds, based upon its review of the base contract as well as

Delivery Order No. 0002 together with the various modifications to both and the

declarations, that the funding ceilings set in the individual delivery orders govern

InterImage's right to payment.  Specifically, the court agrees with the government that

the incremental funding clause, NAVSUP 5252.232-9400 (JAN 1992), which was

identified in the base contract and, the government asserts, included in each delivery

order, set funding ceilings and thus limits InterImage's payment for costs and fee.  As

quoted above, the incremental funding clause in the base contract expressly states that

each delivery order which incorporated the clause would be "[s]ubject to the provisions

of the clause entitled "Limitation of Funds" (FAR 52.232-22) of the General Provisions

of this contract."  In addition, the incremental funding clause in the base contract expressly states that "Individual Delivery Orders may be incrementally funded and will provide[] the necessary information."  Def.'s App. A30 (contract page 30 of 43).  Further, it is clear from the incremental funding clause, NAVSUP 5252.232-9400 (JAN 1992), in Modification No. 6 to Delivery Order No. 0002 that the delivery order was incrementally funded and that incremental funding under the delivery order was available expressly "*[s]ubject to the provisions of the clause entitled "Limitations of Funds" (FAR 52.232-22) of the General Provisions of the contract*."  Modification No. 06 to Delivery Order No. 0002 at 5 of 6 (emphasis added).  The Delivery Order, as modified, goes on to state that "*no legal liability on the part of the Government for payment in excess of $5,279,135.18 shall arise unless additional funds are made available and are incorporated as a modification of this order*."  *Id.* (emphasis added).  Thus, by their terms, the delivery orders were made "subject to the provisions" of the limitation of funds clause, FAR § 52.232-22, and the delivery orders (not only the base contract) capped the amount of funding available for payment.  *See also George G. Sharp, Inc.*, ASBCA No. 55385, 07-2 BCA ¶ 33,696 (finding that incrementally funded delivery orders which included a similar "limitation of liability/incremental funding" provision incorporated the base contracts' limitation of funds clauses).

The conclusion that the funding limitations in the delivery orders govern the amount that InterImage can be paid is also confirmed by FAR § 52.216-18, which was incorporated into the base contract.  FAR § 52.216-18 provides that "[a]ll delivery orders or task orders are subject to the terms and conditions of this contract."  Thus, the

provision made the delivery orders subject to the limitation of cost and funds clauses. Moreover, although FAR § 52.216-18 states that "[i]n the event of conflict between a delivery order or task order and this contract, the contract shall control," by virtue of the inclusion of NAVSUP 5252.232-9400 (JAN 1992) in the delivery orders, there could not be a conflict between the base contract and the delivery orders with regard to the amount of funding available for the work identified in the order.  The funding ceilings were set in the delivery orders.  Accordingly, InterImage is only owed additional money from the government if it can establish that the amount sought for unpaid costs does not exceed the funding ceilings in the eleven delivery orders as modified.

The court finds based on the language in the base contract and delivery orders that InterImage's motion for summary judgment for its unpaid fixed fee also must be denied. The government argues that the actual fee allowed under the contract "is determined by the limits contained in the modifications to the [delivery orders], in addition to the level of effort formulas contained in the [contract]."  Def.'s Resp. 21-22.  The government argues that InterImage is not entitled to summary judgment regarding the additional amount of fee it contends it is owed based on the sworn declaration of Ms. Ellingsen. Ms. Ellingsen in her December 12, 2016 declaration stated that she "provided to Ms. Caskey the allowable fee using the total direct labor hours stated in the final voucher * unit cost, unless it exceeds the funding ceiling."  Def.'s App. A254.  Ms. Ellingsen explains in her declaration, "[a]lthough InterImage believes that it is allowed to recover the total fee under the Contract, it is my position that the allowed fee should be based upon the actual hours incurred, taking into consideration the limit prescribed by each

[delivery order]." *Id.* In support of this position, the government relies primarily on the "LEVEL OF EFFORT – DELIVERY/TASK ORDER PERFORMANCE (FISC DET PHIL) (Oct 1992)" clause in the base contract, which states in relevant part that "the contractor shall be allowed to adjust the quantity of labor hours provided for within labor categories specified in the order provided that in so performing the contractor shall not in any event exceed the ceiling price restrictions of any order, including modifications thereof." Def.'s Resp. 21-22; Def.'s App. A17 (contract page 17 of 43), A69 (Modification No. P00007). InterImage acknowledges that a contracting officer may equitably adjust the fixed fee under its base contract if all of the estimated hours are not performed, but argues that it is entitled to its entire fee in this case because the contracting officer never issued an equitable adjustment. Pl.'s Reply 25-26.

There is no dispute that there has not been an equitable adjustment presented to the court. However, as discussed above, the court has concluded that the individual delivery orders and not only the base contract govern. The delivery orders established the amount of funding available "inclusive of any fee." Because InterImage's fixed fee is limited by the funding ceilings specified in the individual delivery orders, the court cannot grant summary judgment regarding its claim for unpaid fee. Whether InterImage is owed any additional fixed fee will turn on whether the fee it argues it is owed fits within the funding ceilings in the delivery orders.

IV.     **CONCLUSION**

For the reasons above, InterImage's motion for summary judgment is **DENIED**.

The parties shall have until **July 31, 2017** to propose a schedule for next steps in this

litigation.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge