# In the United States Court of Federal Claims

Nos. 15-582C & 16-1300C
**CONSOLIDATED**
(Filed: January 13, 2020)

| | |
|---|---|
| INTERIMAGE, INC., <br><br>               Plaintiff, <br><br>v. <br><br>THE UNITED STATES, <br><br>               Defendant. | Cross-Motions for Summary Judgment; RCFC 56; Disputed Issues of Fact; Unforeseen Costs; Cost Plus Percentage of Cost; Fixed Fee Equitable Reduction |

*Jerry Stouck*, Washington, DC, for plaintiff.

*Sheryl L. Floyd*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Kenneth M. Dintzer*, Deputy Director.

**OPINION DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**FIRESTONE**, *Senior Judge*.

      Pending before the court in these consolidated cases are the parties' cross-motions for summary judgment. Plaintiff InterImage, Inc. (InterImage) seeks to recover $453,548 from the United States, claiming that it is owed more than it was paid for work under Navy Contract No. N001-05-D-0058 (Contract). Defendant United States (the government) seeks to recover $86,061 from InterImage, claiming that it overpaid InterImage for work under the Contract. For the reasons discussed below, the parties' cross-motions for summary judgment are **DENIED**.

I.   **BACKGROUND**

   A.   **Original Contract and Prior Decision**

The background of this dispute is set out in *InterImage, Inc. v. United States*, 133 Fed. Cl. 355 (2017). As discussed in that opinion, the Contract at issue was awarded to InterImage on September 27, 2005, by the Norfolk Contracts Department (now known as the Fleet Logistics Center Norfolk), on behalf of the Naval Criminal Investigative Services (the Navy) to provide full-life-cycle software development services for a new Criminal Incident and Case Management System. *Id.* at 358. The Contract included 11 delivery orders. *Id.* at 362. InterImage received approximately $20 million on the Contract. *Id.* at 364. In January 2013, InterImage submitted a final invoice for an additional $990,000. *Id.* The Navy paid InterImage approximately $295,000 of the final $990,000 claimed. *Id.* The government was unable to make additional payments because funding for the contract had been de-obligated and the government needed to find funding from another source. *Id.*

In August 2015, InterImage submitted a certified claim for $695,684.48 to a contracting officer with the Defense Contract Management Agency (DCMA). *Id.* at 365. On February 3, 2016, the contracting officer issued a final decision finding that InterImage was due an additional $660,023.72 plus interest on the Contract. *Id.* While endeavoring to find additional funds to pay InterImage, a successor DCMA contracting officer, with the assistance of an auditor from the Defense Contract Audit Agency (DCAA), determined that her predecessor's February 2016 final decision was incorrect. *Id.* at 366. The new contracting officer and auditor determined that InterImage was

overpaid on the Contract and not entitled to any additional payment. *Id.* at 367. They also determined that InterImage was seeking payments in excess of the ceiling amounts in the individual delivery orders issued under the Contract and was not entitled to additional payments on this ground as well. *Id.* at 366-67.

On October 7, 2016, InterImage filed a four-count complaint seeking payment based on the February 2016 contracting officer's final decision. InterImage then filed a motion for partial summary judgment on Count I, its breach of contract claim, on November 4, 2016.[1] *Id.* at 366. In July 2018, the court denied InterImage's motion for summary judgment. *Id.* at 357, 371. The court determined that InterImage was only owed additional money from the government if it could establish that the amount sought was both owed to InterImage and did not exceed the funding ceilings in the 11 delivery orders issued by the Navy under the Contract. *Id.* at 369-71.

B.   **Subsequent Revised Claim**

In response to the court's opinion and at the court's request, in March 2018, Ms. Steele, InterImage's Founder, President and Chief Executive Officer, submitted a declaration setting forth a revised claim that was different from InterImage's 2015 certified claim. *See* Def.'s App. 402, ECF No. 100-25. Ms. Steele, on behalf of InterImage, now claims that the government owes InterImage $453,548. *See* Pl.'s Cross-

---

[1] On December 13, 2016, the government filed a motion to dismiss Counts II, III, and IV of the complaint for lack of jurisdiction or failure to state a claim. On January 4, 2017, the court granted InterImage's unopposed motion to stay briefing on the government's motion to dismiss until resolution of InterImage's motion for summary judgment on Count I of the complaint.

3

Mot. at 1, ECF No. 108; Pl.'s Reply at 1, ECF No. 117. InterImage is now seeking summary judgment based on its revised allocation of costs to delivery orders as set forth in Ms. Steele's 2018 declaration and later 2019 declarations.[2] *See* Pl.'s Cross-Mot. at 14-18.

The government's motion for summary judgment, seeking $86,061 from InterImage, is based on the DCAA's subsequent review of InterImage's August 18, 2015 certified claim together with a review of InterImage's revised March 2018 claim and the invoices and data on disbursements made to InterImage. *See* Def.'s Mot. at 8-13. The government asserts in its filings in support of its motion for summary judgment that the DCAA has reviewed Ms. Steele's revised and corrected allocations of costs to delivery orders together with the supporting documents she provided and has found that Ms. Steele's revised allocation of costs to delivery orders is not supported. S*ee, e.g.*, Def.'s Surreply at 4, ECF No. 129. Oral argument on the parties' cross-motions for summary judgment was held on December 9, 2019.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2] InterImage in its July 19, 2019 reply to the government's opposition to InterImage's motion for summary judgment endeavored to address the DCAA's criticisms of InterImage's revised allocation of its costs to delivery orders with a new declaration from Ms. Steele. In her July 2019 declaration, Ms. Steele corrected certain mistakes she acknowledged were found in her initial revised allocation. The court allowed the government to file a surreply to InterImage's reply brief so that the government could address Ms. Steele's July 19, 2019 declaration.

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) of the Rules of the Court of Federal Claims (RCFC); *see Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 247 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987). It is a "salutary method of disposition designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)). The moving party bears the burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions,* 833 F.2d at 1563 (quoting *Celotex Corp.,* 477 U.S. at 325). Where the non-moving party makes a sufficient showing as to the existence of a genuine issue of fact for which the moving party bears the burden of proof, summary judgment is not appropriate. *Celotex Corp.,* 477 U.S. at 322-23.

### III. DISCUSSION

#### A. Disputed Issues of Fact Preclude Summary Judgment for Delivery Orders 1 and 2

InterImage claims in its motion for summary judgment that it is entitled to an additional $208,454 on Delivery Order 1 and an additional $15,047 on Delivery Order 2 for cost overruns. Pl.'s Cross-Mot. at 23, 30. InterImage argues that although the amounts it is seeking exceed the amounts authorized by the modified Delivery Orders, InterImage could not have foreseen these cost overruns when the Orders were modified. Relying on *General Electric Co. v. United States*, 440 F.2d 420, 424 (Ct. Cl. 1971), InterImage argues that it may be paid on these cost overruns because InterImage, "through no fault or

inadequacy of its own, had no notice itself of the overrun until well after completion of its performance."[3] Specifically, InterImage argues that it is entitled to be reimbursed for the amounts sought because "InterImage's *actual* indirect overhead rates as settled after the 2012 DCAA audit significantly exceeded InterImage's *provisional* overhead rates used in the invoices InterImage submitted . . . ." Pl.'s Cross-Mot. at 26 (emphasis in original). InterImage thus argues it could not have foreseen the costs that exceeded the amounts authorized by the Delivery Orders at the time of performance. *Id.* at 29-30. InterImage also argues that it relied on the representations of the government that the amendments to Delivery Orders 1 and 2 would have no impact on the availability of funds. *Id.* at 29.

The government contends that InterImage's motion for payment under Delivery Orders 1 and 2 must be denied because the Contract incorporated FAR § 52.232-20, Limitation of Cost,[4] FAR § 52.232-22, Limitation of Funds,[5] and NAVSUP § 5252.232-

---

[3] The court in *General Electric* held that a contracting officer can allow additional costs incurred by a contractor even where the contractor does not provide proper notice where (1) the limitation of cost clause states "[i]f at any time the contractor has reason to believe" a cost overrun is imminent, the contractor must provide notice and (2) at no time during performance did the contractor have reason to know of its overrun. 440 F.2d at 423-25.

[4] As relevant here, FAR § 52.232-20(b) provides that "[t]he Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that" there will be a cost overrun.

[5] FAR § 52.232-22(c) states in relevant part that the "Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of (1) the total amount so far allotted to the contract by the Government . . . ."

9400, Limitation of Liability – Incremental Funding[6] provisions. *See* Def.'s App. 30, 38, ECF No. 100-2. Applying these three provisions, the government argues that InterImage needed to track and notify the contracting officer in writing and in a timely fashion in order to claim any cost overruns, but InterImage did not do so. Def.'s Resp. & Reply at 6-9, ECF No. 114. The government thus contends that InterImage is not legally entitled to any payments beyond those it received for Delivery Order 1 and Delivery Order 2, as modified. *See, e.g.*, Def.'s Mot. at 13-14; Def.'s Resp. & Reply at 9-15; Def.'s Surreply at 14-21. While the government concedes that Delivery Order 1 did not expressly include FAR § 52.232-22 or NAVSUP § 5252.232-9400 and Delivery Order 2 did not expressly include FAR § 52.232-22, the government argues that the application of these provisions flow down from the base Contract to the delivery orders and that Delivery Order 1 did not include NAVSUP § 5252.232-9400 because that delivery order was fully funded when it was issued. Def.'s Mot. at 14; Def.'s Resp. & Reply at 10 n.4.

The government also disputes InterImage's assertions regarding the differences between its final and provisional rates. *See* Def.'s Surreply at 18-20. The government contends that the cost overruns InterImage is seeking are not attributable to a change between the provisional and final indirect rates because the final indirect rates were not higher than the provisional rates InterImage charged the government. *See* Def.'s Resp. &

---

[6] NAVSUP § 5252.232-9400 provides that the contract would be incrementally funded up to a certain limit, inclusive of fee, and that the government had no legal liability beyond that funding limit unless additional funds were made available and incorporated as a modification into the contract. *InterImage*, 133 Fed. Cl. at 359. That provision also noted that individual delivery orders may be incrementally funded and would provide the "necessary information." Def.'s App. 30, ECF No. 100-2.

Reply at 12-15. Instead, the government argues, the cost overruns InterImage seeks for Delivery Orders 1 and 2 could only be attributable to InterImage's failure to properly account for all of its costs at the time they were incurred. The government argues that InterImage had a duty (1) to maintain its accounting system to ensure timely knowledge of cost overruns before the costs are incurred, and (2) "to evaluate properly the financial data that the accounting system generates." *See* Def.'s Surreply at 15-16 (citing *Advanced Materials, Inc. v. Perry*, 108 F.3d 307, 311 (Fed. Cir. 1997)). The government contends that InterImage failed to address overruns in a timely manner because InterImage had the opportunity to confirm that it had received reimbursement for all the costs it had incurred under Delivery Order 1 and 2 prior to signing modifications which reduced the funding for those delivery orders. *See* Def.'s Surreply at 16. According to the government, because InterImage was or should have been aware of all the direct and indirect costs it had incurred prior to signing the funding reductions in Modification 3 to Delivery Order 1 and Modification 7 to Delivery Order 2, InterImage is not entitled to any additional payment and cannot rely on *General Electric Co. v. United States*.

InterImage replies that *General Electric* is still applicable because DCAA used a different *base* for calculating the final indirect rates than InterImage had used to calculate its provisional rates, and that the attributable cost difference was unknowable. Pl.'s Reply at 15-17. The government in its surreply responds that as a factual matter InterImage's argument about the different bases is unsupported. *See* Def.'s Surreply at 19-20.

The court has considered the parties' motions and accompanying declarations. As an initial matter, InterImage's argument that it may seek repayment for any cost overruns

8

on Delivery Order 1 because Delivery Order 1 does not expressly contain clauses limiting the government's liability is unsupported. *See* Pl.'s Reply at 14. This court has previously held that FAR § 52.216-18 "was incorporated into the base contract" and provides that "[a]ll delivery orders or task orders are subject to the terms and conditions of this contract." *InterImage*, 133 Fed. Cl. at 370 (internal quotation omitted). The base Contract includes the limitations of funds, cost, and liability clauses relied on by the government, which are therefore incorporated into the delivery orders. *See id.* at 358-59. In fact, the court relied on these base-Contract clauses, in part, when it previously determined that "the funding limitations in the delivery orders govern the amount that InterImage can be paid." *Id.* at 369-370. Thus, to the extent InterImage is arguing that because some of these clauses were not expressly included in Delivery Order 1 the funding limitation in that Delivery Order does not apply, that argument is rejected.

InterImage further argues that even if the limitations clauses apply, the unpaid costs it seeks were unforeseen, and it is still entitled to payment under *General Electric*. *See* Pl.'s Reply at 18. As discussed above, the court in *General Electric* held that a contracting officer can allow additional costs incurred by a contractor even where the contractor does not provide proper notice where (1) the limitation of cost clause states "[i]f at any time the contractor has reason to believe" a cost overrun is imminent, the contractor must provide notice and (2) at no time during performance did the contractor have reason to know of its overrun. 440 F.2d at 423-25. Here, the FAR clauses incorporated into the Contract provide that a contractor must give notice of cost overruns if the contractor has "reason to believe" that it will incur these overruns. *See* Def.'s App.

9

38 (incorporating FAR § 52.232-20 and FAR § 52.232-22); *InterImage*, 133 Fed. Cl. at 358. Thus, whether InterImage can recover the costs it seeks depends on whether it had reason to believe that a cost overrun would occur during performance. *See Gen. Elec.*, 420 F.2d at 425; *Advanced Materials*, 108 F.3d at 311-12.

The court concludes that there are disputed issues of fact regarding whether InterImage's sought costs were unforeseen, which preclude summary judgment on InterImage's claim for additional payment under Delivery Orders 1 and 2. InterImage argues that its costs were unforeseen because DCAA used a different base in calculating final costs, and that it relied on representations by the government that the amendments to the Delivery Orders would not affect the availability of funds. *See* Pl.'s Reply at 14-18. The government presents facts to show that InterImage and the Navy applied the final rates to the same base and that any shortfall is due to InterImage's failure to adequately account for all its indirect costs. *See* Def.'s Surreply at 17-21. The dispute between the parties involves genuine issues of material fact that cannot be resolved on summary judgment. Accordingly, the parties' motions for summary judgment for Delivery Orders 1 and 2 must be denied.

    **B.**    **Disputed Issues of Fact Preclude Summary Judgment for Delivery Order 10**

InterImage further argues that it is entitled to the full fee authorized under Delivery Order 10, for an additional $50,561. The relevant language from Delivery Order 10, the "payment of fixed fee" clause, states: "The fixed fee for work performed under this contract is $178,366.86 provided that approximately 23,814 hours of technical effort

are employed by the contractor in performance of this contract. If substantially fewer than 23,814 hours of said services are so employed, the fixed fee shall be equitably reduced to reflect the reduction of work." Def.'s App. 322, ECF No. 100-15. The Navy's contracting officer assigned to this contract, Mr. Excell, states that InterImage is not entitled to the full fee because InterImage performed only 54 percent of the total 23,814 hours ordered under Delivery Order 10. *See* Def.'s Resp. & Reply at 27-28.

It is true, as InterImage argues, that in its prior summary judgment decision the court stated that whether InterImage is entitled to its full fee will depend on whether the amounts owed fit within the ceilings authorized under each delivery order. Pl.'s Cross-Mot. at 37 (citing *InterImage*, 133 Fed. Cl. at 370-71). The amount InterImage seeks is within the ceiling amount of Delivery Order 10. *Id.* However, the payment of fixed fee clause in Delivery Order 10 states that if InterImage works "substantially fewer than 23,814 hours", the fixed fee "shall be equitably reduced." Def.'s App. 322. InterImage argues that these terms do not apply to it because the contracting officer no longer has authority to make an equitable adjustment. *See* Pl.'s Reply at 19-20. InterImage further contends that the payment of fixed fee clause in Delivery Order 10 applies to the contract as a whole, and that the total amount of hours InterImage devoted to the contract closely approximate the total hours specified in the final contract amendment. *See* Pl.'s Cross-Mot. at 40.

The court agrees with the government that the terms of Delivery Order 10 apply to the additional fee that InterImage seeks under that Delivery Order. Although the court previously held that "[w]hether InterImage is owed any additional fixed fee will turn on

11

whether the fee it argues it is owed fits within the funding ceilings in the delivery orders," the court's decision did not preclude the application of other terms of the delivery orders to limit the amount of fee that InterImage is owed. *InterImage*, 133 Fed. Cl. at 371. InterImage's arguments to the contrary lack merit. The case InterImage cites to argue that an equitable reduction can no longer be made notes that once a claim is in litigation, a contracting officer is divested of authority to issue a final decision on a claim. *See* Pl.'s Reply at 20 (citing *Universal Shelters of Am., Inc. v. United States*, 87 Fed. Cl. 127, 147 (2009)). However, no party disputes that this court has jurisdiction to determine what, if any, amounts of money InterImage is owed based on the terms of the Contract and the delivery orders, and that review is de novo. *See InterImage*, 133 Fed. Cl. at 368; *Omran Holding Grp., Inc. v. United States*, 134 Fed. Cl. 561, 564 (2017).

The court also rejects InterImage's contention that the payment of fixed fee clause in Delivery Order 10 applies to the contract as a whole. Although that clause does use the word "contract," Def.'s App. 322 ("[t]he fixed fee for work performed under this *contract*" (emphasis added)), rather than "delivery order," it is clear that the limitations of funding and hours described in the provision apply to that Delivery Order. The provision describes a fee of $178,366.86 for approximately 23,814 hours of technical effort. *Id.* In contrast, InterImage has represented that it spent over 200,000 hours on the contract as a whole. *See* ECF No. 61 at 27; July 19, 2019 Steele Decl. ¶ 31. In addition, similar provisions have been included in other delivery orders under the Contract. *See, e.g.*, Def.'s App. 229-30. The court therefore concludes that the payment of fixed fee clause in

Delivery Order 10, which provides for the equitable reduction, applies to the fee InterImage seeks.

However, whether the 12,883 hours InterImage devoted to Delivery Order 10 are "substantially fewer" to mandate a reduction in the fixed fee is a question of fact that is disputed by the parties. *See* Def.'s Resp. & Reply at 27-28; Tr. 46:17-20 (plaintiff arguing that substantially fewer "is in the eye of the beholder"). The parties' motions for summary judgment regarding Delivery Order 10 are therefore denied.

### C. Disputed Issues of Fact Preclude Summary Judgment for Delivery Order 5

The government refuses to pay InterImage the $5,812 fixed fee on Delivery Order 5 because that payment would amount to a cost plus percentage of cost contract payment contrary to law. *See* Def.'s Mot. at 17-18.[7] InterImage argues that the cost plus percentage of cost contracts bar is inapplicable because Modification 4 to Delivery Order 5 increased the fixed fee in Delivery Order 5 to $11,855.84 to cover both labor and hardware and software cost, and thus the fixed fee was no longer calculated as a percentage of the hardware and software to be purchased under that Delivery Order. *Id.*

The government responds that Delivery Order 5, properly interpreted, is a cost plus percentage of cost contract because it provides payment for hardware and software items at 3.5% of the actual cost. Def.'s Resp. & Reply at 18. The government further

---

[7] While the government has already paid $3,456 of the $5,812 under Delivery Order 5, the government claims that InterImage owes the government the $3,456. *See* Pl.'s Reply at 18. Therefore, while InterImage claims that the government owes it $2,354, $5,812 is in dispute in total. *Id.*

argues that Modification 4's inclusion of an additional $6,073.80 fixed fee for labor hours under Delivery Order 5 (for a total fixed fee of $11,885.84) does not change the fact that the total fixed fee for the hardware and software items was $5,812.04, improperly measured as a percentage of hardware and software costs. *Id.* at 19.

It is well-established by statute and case law that cost plus percentage of cost type contracts are prohibited. *See e.g., Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1150 (Fed. Cir. 1983); *Information Sys. & Networks Corp. v. United States*, 64 Fed. Cl. 599, 608 (2005) ("The cost-plus-percentage-of-cost type contract is prohibited by 10 U.S.C. § 2306."); *see also* FAR § 16.102(c) ("The cost-plus-a-percentage-of-cost system of contracting shall not be used . . . ."). A cost plus percentage of cost type contract is one that provides a fee as a specified percentage of the contractor's cost of accomplishing the work to be performed.

The question before the court is whether the hardware and software "fixed fee" in Delivery Order 5, as amended by Modification 4, amounted to a cost plus percentage of cost contract. The provision in Modification 4 states:

> For the Hardware / Software Items under the contract . . . the following fixed fee amounts and rates shall apply. Although the maximum fixed fee on these SubCLINs is established in the contract, the fixed fee will be applied as a percentage of the cost of these hardware / software items according to the rates set forth below, and not exceeding the maximum fixed fee of the contract:
>
> | Fixed Fee | Fixed Fee Rate |
> |---|---|
> | $5,812.04 | 3.5% |

Def.'s App. 228-29.

InterImage argues that the "fixed fee" for Delivery Order 5 is $11,886, without regard to the 3.5% fixed fee rate for hardware/software items. Pl.'s Reply at 22. InterImage contends that, while the $5,812.04 fixed fee amount is 3.5% of the stated estimated maximum cost of $166,058 for hardware/software under Delivery Order 5, contemporaneous contracting documents establish that InterImage actually spent less than the estimated maximum on hardware and software. Id.; Jan. 30, 2019 Steele Decl. ¶ 41. According to InterImage, this confirms that the 3.5% formula had "no bearing on the $11,886 fixed fee amount" under Delivery Order 5. Pl.'s Reply at 22. The government argues that the provision at issue establishes that the fixed fee associated with hardware/software costs was dependent on actual costs of the hardware and software. Def.'s Resp. & Reply at 18-19; Def.'s Mot. at 17-18. Thus, the government contends, the $5,812 portion of the $11,866 fixed fee associated with hardware/software costs is an impermissible cost plus percentage of cost provision.

The court finds that the terms of Modification 4 are sufficiently ambiguous such that the parties' dispute constitutes a genuine issue of material fact. It is unclear, based on the terms of Modification 4, whether the fixed fee provision for hardware/software costs simply sets a fixed fee *ceiling* of $5,812.04 regardless of costs incurred, Def.'s App. 229 ("not exceeding the maximum fixed fee of the contract"), or impermissibly provided for a cost plus percentage of cost formula where the $5,812.04 serves as a *floor*, id. ("the fixed fee will be applied as a percentage of the cost of these hardware / software items according to the rates set forth below"). Moreover, the parties rely, in part, on the declarations of Ms. Steele and a DCAA auditor, Ms. Meredith Caskey, in advancing their

interpretations of Delivery Order 5, suggesting that this matter is not amenable to summary resolution. *See Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988) ("To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution."). Thus, summary judgment regarding Delivery Order 5 must be denied. The court, however, agrees with the government that if the court rules that the fixed fee provision is not barred by the cost plus percentage of cost prohibition and instead provides a fixed fee ceiling, InterImage is entitled to a fee recovery of no more than 3.5% of the total cost of the hardware and software items purchased under Delivery Order 5, up to the ceiling of $5,812.04. Def.'s Resp. & Reply at 18 n.8.

### D.  Disputed Issues of Fact Preclude Summary Regarding the Allocation of Costs to Delivery Orders

As discussed above, the court has before it several declarations from Ms. Steele and Ms. Caskey together with many pages of supporting documentation. The declarations make clear that Ms. Steele's allocation of costs from certain delivery orders to others is disputed by the government and that the government supports its objections to Ms. Steele's allocation of costs to delivery orders with many examples of allocation discrepancies from InterImage's own documents. The court has reviewed these disputes and concludes that they amount to material issues of fact which preclude the court from granting summary judgment to InterImage based on Ms. Steele's reallocation of costs to individual delivery orders. These disputes also preclude the court from granting the government's motion for summary judgment on its claim that it overpaid InterImage.

Whether InterImage is entitled to additional payments based on Ms. Steele's allocation of costs to open delivery orders or owes the government money will have to be resolved at trial.

## IV. CONCLUSION

For the above-stated reasons, the court **DENIES** the parties' cross-motions for summary judgment. The court will issue a separate order proposing an expedited pretrial schedule and trial for the remaining issues in this case. Given the protracted nature of this litigation, the parties should plan on no more than a three-day trial to occur the last week of April 2020.

**IT IS SO ORDERED**.

s/Nancy B. Firestone<br>
NANCY B. FIRESTONE<br>
Senior Judge